UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:14-CV-137

ASHLEY PURI            PLAINTIFF

v.

CRYSTAL BAUGH and            DEFENDANTS
SHELTER MUTUAL INSURANCE COMPANY

**MEMORANDUM OPINION & ORDER**

Plaintiff filed a motion to remand this action to Warren Circuit Court. Defendants, however, assert that Crystal Baugh ("Baugh") was fraudulently joined as a defendant to defeat diversity jurisdiction, and that this matter can be heard in this forum. Because the Court finds none of the claims against Baugh colorable and the jurisdictional requirement for diversity met, the Motion to Remand (DN 6) is **DENIED**.

    **I.**     **SUMMARY OF FACTS AND CLAIMS**

While still a minor, Ashley Puri ("Puri") was injured as a passenger in her family's car on October 4, 2009. At the time of the accident, she was covered under an auto insurance policy issued by Shelter Mutual Insurance Company ("Shelter").[1] (Answer ¶ 9, DN 1-6). Following the accident, Baugh, Shelter's claims adjuster, contacted Puri's mother to, *inter alia*, settle Puri's bodily injury claim. (Compl. ¶ 9, DN 1-1; Answer ¶ 9).

---

[1] Plaintiff is equivocal on her position as a first party insured or third party claimant. For the purposes of this ruling, her status as one or the other is immaterial.

1

On January 23, 2010, Baugh offered the sum of $1,500 in exchange for an "indemnifying release." (Compl. ¶¶ 11-12). Communication between Baugh and Puri's mother consisted of two phone calls and two letters: one making the settlement offer and a second letter forwarding the settlement check and release. (Def's Resp. to Pl.'s Mot. to Remand Ex. 4-5, 8, DN 12-4 to 12.5, DN 12-8; Hr'g Tr. 19). On August 18, 2014, Puri filed suit in Warren Circuit Court asserting claims of negligence, fraud in the inducement, fraud by omission, and intentional infliction of emotional distress ("IIED") against Baugh relating to the release negotiations. (Compl. ¶¶ 55-81). Puri alleged that Baugh disregarded her duty to advise and misrepresented or omitted material facts over the course of her communication with Puri's mother.

Defendants then removed the lawsuit to this Court based upon diversity jurisdiction under 28 U.S.C. § 1332, arguing that Baugh's Kentucky citizenship should be disregarded for jurisdictional purposes because she was fraudulently joined to the suit. (Notice of Removal, DN 1). It is undisputed that Baugh and Plaintiff are Kentucky citizens, and that Shelter is a citizen of Missouri. The Court held a hearing on this motion on April 15, 2015. (Order, DN 21).

## II. STANDARD

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction[] may be removed by . . . the defendants." 28 U.S.C. § 1441(a). Fraudulent joinder is "a judicially created doctrine that provides an exception to the requirement of complete diversity." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (citation omitted) (internal quotation marks omitted). Defendants can avoid remand "by demonstrating that the non-diverse party was fraudulently joined." *Probus v. Charter Commc'n, LLC*, 234 F. App'x 404, 406 (6th Cir. 2007) (citation omitted) (internal quotation marks omitted).

2

Fraudulent joinder exists where "it [is] clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law. . . ." *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (citation omitted). "However, if there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, [the federal] [c]ourt must remand the action to state court." *Coyne*, 183 F.3d at 494. "[A] claim is colorable 'if the state law *might* impose liability on the resident defendant under the facts alleged.'" *Kent State Univ. Bd. of Trs. v. Lexington Ins. Co.*, 512 F. App'x 485, 489 (6th Cir. 2013) (citing *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2003)). Further, the federal court must resolve "all disputed questions of fact and ambiguities in the controlling . . . state law in favor of the non-removing party." *Coyne*, 183 F.3d at 494 (citation omitted) (internal quotation marks omitted). The burden to establish jurisdiction is on the removing party. *Id.*

The standard for fraudulent joinder is similar to that for motions to dismiss under Fed. R. Civ. P. 12(b)(6). Courts analyzing those motions consider only pleadings and attached documents. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). All allegations in the complaint are assumed true. *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir.1983). The standard for fraudulent joinder is even more deferential to the plaintiff than motions under Rule 12(b)(6). *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 954 (6th Cir. 2011). Because fraudulent joinder questions the court's jurisdiction rather than the merits of the claim, in analyzing motions to remand for fraudulent joinder courts are empowered to go beyond the pleadings. *Id.* Nonetheless, "even if the district court 'pierces the pleadings' to consider summary-judgment-type evidence (such as depositions, affidavits, etc.), the proper standard for evaluating that evidence remains akin to that of a Rule 12(b)(6) motion to dismiss,

and is arguably even more deferential."[2] *Id.* Further, "any contested issues of fact must be construed in the plaintiff's favor." *Id.*

### III. DISCUSSION

A removing defendant must prove the jurisdictional requirements are met by a preponderance of the evidence. *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 829 (6th Cir. 2006). For diversity jurisdiction, these requirements include complete diversity and a specified amount in controversy. 28 U.S.C. § 1332(a). In this case, these requirements demand the case be remanded should any defendant be found to share plaintiff's Kentucky citizenship or the amount in controversy be less than $75,000.

To determine whether the diversity requirement is met, the Court must determine whether Plaintiff has stated viable claims for negligence, fraud, or intentional infliction of emotional distress against Baugh, a fellow Kentucky citizen of Plaintiff, under the fraudulent joinder standard. Should these claims survive that standard, complete diversity would be lacking. The amount in controversy requirement concerns all claims against both Shelter and Baugh. Even when the amount is unspecified, "clear allegations" in the complaint that a case involves a "sum well in excess of the $75,000" are sufficient for jurisdictional purposes. *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 573 (6th Cir. 2001) (citation omitted) (internal quotation marks omitted). When removing a case to this court, the defendant has the burden to show by a preponderance the threshold is met. *Id.*

---

[2] The parties expressly acknowledged that the Court is empowered to consider material submitted by the parties, which goes significantly beyond the scope of the pleadings and includes Shelter's claims file and all written communication between Baugh and Puri's mother. (Hr'g Tr. 2-3).

      A.      **The amount in controversy exceeds $75,000.**

Puri has not alleged a specific dollar amount of damages. Puri's claim for damages includes unquantified investigation and attorneys' fees, physical injuries, emotional pain, medical expenses, and punitive damages arising from breach of contract, intentional torts, negligence, and bad faith. (Compl. ¶ 81). Shelter suggests several reasons why these claims satisfy the amount in controversy requirement. First, Shelter sent Puri's counsel a letter asking for a response within 24 hours stipulating damages would not exceed $75,000. Shelter received no response, and thus argues Puri refuses to stipulate. (Def's Resp. to Pl.'s Mot. to Remand 17, DN 12). Second, Shelter claims Puri's Rule 26 disclosures failed to provide a computation of damages as required under that Rule. *Id.* at 18. Finally, Shelter insists this case is factually similar to another case, *Adkins v. Shelter Mutual Insurance Co.*, which Plaintiff's counsel has filed against it seeking $6,000,000 in damages.[3] *Id*. By analogy, Shelter argues that the controversy here must be in excess of $75,000. While Shelter's proposed stipulation does little to further its argument, other evidence convinces this Court the amount in controversy is met.

Puri contends her failure to stipulate given a 24-hour ultimatum is minimally persuasive proof the jurisdictional threshold is met. In support of this argument, Puri points to the ruling from a sister court in this circuit concerning the same insurance company. In *Holland v. Buffin*, No. 14-149-ART-EBA (E.D. Ky. Jan. 16, 2015) (attached as Exhibit 1 to Puri's Motion for Leave to File Supplemental Authority (DN 20-1)), the court remanded after finding the amount in controversy unsatisfied. In that case, Shelter had issued an "ultimatum" that the plaintiff respond with an amount in controversy stipulation and removed a mere four days later. *Id.* While the court considered the non-response "some evidence," it found unpersuasive the plaintiff's

---

[3] *Adkins v. Shelter Mut. Ins. Co.*, No. 5:12-CV-173-KKC (E.D. Ky. filed May 25, 2012.

damages analogy to *Adkins* and the allegation of "serious injury" in the complaint. *Id.* Here, Shelter gave Puri only 24 hours to respond to its letter before removing, even less time than in *Holland.* That "stipulation" offers only minimal proof the amount in controversy is satisfied.

Puri argues evidence produced after removal is irrelevant to the amount in controversy analysis. (Hr'g Tr. 3, DN 23). Puri correctly notes jurisdiction is determined as of the time of removal. *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000); *see also Hayes*, 266 F.3d at 573. "Because [of this], events occurring after removal that reduce the amount in controversy do not oust jurisdiction." *Rogers*, 230 F.3d at 872. Accordingly, post-removal stipulations reducing damages to less than $75,000 do not require remand. *See, e.g.*, *Sanford v. Gardenour*, 225 F.3d 659, 2000 WL 1033025, at *3 (6th Cir. 2000) (table opinion). From these rules, Puri maintains "the information possessed by Shelter [at the time of removal] is determinative" for purposes of the amount in controversy. (Pl.'s Supplemental Filing on Pl.'s Mot. to Remand 9, DN 26). This argument misconstrues those holdings. "A distinction must be made [] between subsequent events that change the amount in controversy and subsequent revelations that, in fact, the required amount was or was not in controversy at the commencement of the action." *Jones v. Knox Exploration Corp.*, 2 F.3d 181, 183 (6th Cir. 1993).

This Court may consider evidence of the amount in controversy at the time of removal regardless of whether that evidence was produced (or available) at the time of removal. *See, e.g.*, *Holland v. Lowe's Home Ctrs., Inc.*, 198 F.3d 245, 1999 WL 993959, at *2 (6th Cir. 1999) (table opinion) (considering oral arguments before appellate court in reviewing amount in controversy determination). Further, while jurisdiction must be present when removed, a defendant's knowledge of the facts underlying that jurisdiction is not dispositive. In factual attacks, a "district court [is] empowered to weigh the evidence and no presumptions apply as to the truthfulness of

the . . . allegations." *United States v. A.D. Roe Co., Inc.*, 186 F.3d 717, 722 (6th Cir. 1999) (citation omitted). This Court may properly consider the evidence before it concerning whether the amount in controversy was met at the time of removal. Given the Court's obligation to ensure its own jurisdiction, consideration of such evidence is both appropriate and required. *See Valinksi v. Detroit Edison*, 197 F. App'x 403, 405 (6th Cir. 2006).

Much of the evidence before this Court is similar to that found insufficient in *Holland*. Shelter argues the language in the Complaint, including allegations of "serious injury" and a demand for punitive damages, (Compl. ¶¶ 30, 39), suggest a controversy in excess of the jurisdictional amount. (Defs.' Resp. to Pl.'s Mot. to Remand 18-19, DN 12). Puri argues primarily that the procedural impropriety of Shelter's demanded stipulation requires a finding of an insufficient amount in controversy. Puri contends Shelter "propounded no discovery" to determine the amount. (Pl.'s Supplemental Filing on Pl.'s Mot. to Remand 9). This is not accurate. Fed. R. Civ. P. 26's initial disclosures are "the functional equivalent of a standing request for production under Rule 34." Fed. R. Civ. P. 26(a)(1) advisory committee's note (1993). Puri's initial disclosures, which pursuant to the Rule must contain a computation of damages, included none. Instead, they indicated supplementation would be provided "once discovery is completed." (Pl.'s Initial Disclosures, DN 8). Baugh "should not be able to prevent removal of a case that otherwise meets the requirements of federal jurisdiction by stonewalling and providing incomplete discovery responses until the one-year time limit for removal has elapsed." *Miller v. Malik*, No. CIV. 11-74-ART, 2011 WL 2968428, at *2 (E.D. Ky. July 20, 2011) (citation omitted).

The advisory committee notes to Rule 26 recognize that much information about damages may be in the possession of the opposing party and therefore not available for

7

disclosure at early stages of litigation. Puri's claimed injuries, however, are several years old; it is difficult to imagine information in the hands of the defendants having bearing on those damages. Further, Puri's disclosures were filed days after filing her motion to remand. While the burden is on the removing party to prove jurisdiction, it strikes this Court as inconsistent to simultaneously argue the amount in controversy is not satisfied while refusing to provide any concrete, even if preliminary, damages figures. Her failure to allege a dollar figure sounds in litigation strategy rather than an absence of information.

     Plaintiff's arguments at the hearing buttress this impression. Puri's counsel again declined to stipulate or provide any greater specificity to her damages claim, noting no "depositions or written discovery [had been] exchanged." (Hr'g Tr. 3). Counsel did not provide any detail as to what discovery it expected to receive from Shelter or Baugh that might shed light on the physical, emotional, or medical injuries sustained, or attorneys' fees expended. Counsel's "refusal to specifically deny that her total damages exceed $75,000 is at least some evidence that her damages are more than that amount." *Miller*, 2011 WL 2968428, at \*2 (citing *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 949 (11th Cir. 2000)). Refusals to stipulate or specify are appropriately considered evidence "when the most logical inference from the plaintiff's refusal is that she wants to avoid removal to federal court." *Ison v. C. Reiss Coal Co.*, No. CIV. 13-10-ART, 2013 WL 789122, at \*3 (E.D. Ky. Mar. 1, 2013) (citation omitted). There is little other inference to draw here when the damages sought in *Adkins* are $6,000,000 where Shelter settled the underlying bodily injury claim for $12,000 **before** that action was filed. *See Adkins v. Shelter Mut. Ins. Co.*, No. 5:12-CV-173-KKC, 2014 WL 4231230, at \*1 (E.D. Ky. Aug. 26, 2014). It

8

certainly stands to reason that this case, where the underlying injury claim remains contested, the amount in controversy exceeds the jurisdictional limits.[4]

Plaintiff's evasive responses to the Rule 26 disclosures and similar responses to the Court's questioning during the hearing evidence a controversy in excess of $75,000. The Complaint makes numerous claims including personal injury, bad faith against an insurance company, and punitive damages. The seriousness of these allegations and common experience convince this Court that it is more likely than not that the controversy exceeds $75,000. This case will not be remanded for failure to satisfy this jurisdictional threshold.

      **B.**      **Puri has not alleged viable claims against Baugh related to negligence or fraud.**

Under Kentucky law, the elements for claims of negligence are duty, breach, causation, and damages. *Ill. Cent. R.R. v. Vincent*, 412 S.W.2d 874, 876 (Ky. 1967). Fraud through misrepresentation claims have six elements: a "[1] material representation [2] which is false [3] known to be false or made recklessly [4] made with inducement to be acted upon [5] acted in reliance thereon and [6] causing injury." *Bear, Inc. v. Smith*, 303 S.W.3d 137, 142 (Ky. App. 2010) (citation omitted). Fraud by omission, while materially different in requiring a duty to disclose, likewise requires a showing of injury. *See Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011). Common to all these causes of action is damages. "Negligent conduct that causes no harm is not actionable." *Capital Holding Corp. v. Bailey*, 873 S.W.2d 187, 192 (Ky. 1994). Likewise, fraud is not consummated until injury is realized. *Johnson v. Equitable Life Assur. Soc'y of U.S.*, 125 S.W. 1074, 1076 (Ky. 1910). The Court finds Plaintiff has failed to assert damages against Baugh because any wrongful conduct on her part has not yet caused any loss to Puri in light of Shelter's steadfast commitment to pay Puri's

---

[4] Before this action was filed, Shelter offered to pay Puri's underlying injury claim in full, an offer Puri acknowledged and Shelter repeated at oral argument. (Hr'g Tr. 6).

insurance claim in full. (Hr'g Tr. 6). Because injury must be sustained for a cause of action for fraud or negligence to accrue, Puri's claims against Baugh are not ripe. *See Sullivan v. Tucker*, 29 S.W.3d 805, 808 (Ky. App. 2000) ("[C]ourts are not authorized to render advisory opinions concerning moot or hypothetical issues." (citations omitted); *Associated Indus. of Ky. v. Commonwealth*, 912 S.W.2d 947, 951 (Ky. 1995) ("Within the context of federal law, it is understood that Article III of the United States Constitution permits only adjudication of actual cases and controversies. An actual controversy requires that a controversy be ripe for adjudication. Further, the ripeness doctrine requires the judiciary to refrain from giving advisory opinions on hypothetical issues." (citations omitted)); *Veith v. City of Louisville*, 355 S.W.2d 295, 297 (Ky. 1962) ("The court will not decide speculative rights or duties which may or may not arise in the future, but only rights and duties about which there is a present actual controversy presented by adversary parties, and in which a binding judgment concluding the controversy may be entered." (quotation marks omitted) (citation omitted)); *Doe v. Golden & Walters, PLLC*, 173 S.W.3d 260, 272 (Ky. App. 2005) ("[W]ithout legally cognizable damages, there is no ripe claim for legal malpractice." (citation omitted)).

In the Complaint, Puri has only made only formulaic damages allegations against Baugh. (Compl. ¶¶ 59, 69, 77). The root of Puri's claim to damages is the release her parents signed. It is unclear what—if any—effect this release is purported to have had. For a payment of $1,500, the signatories (Douglas and Bonnie Cropper) released "Douglas Cropper, Bonnie Cropper" from any claims for liability for the injuries Puri sustained in the accident. (Indemnifying Release (Minors), DN 12-9). This release may not have been the correct form under Shelter's claims manual, or may have incorrectly listed the releasees (i.e., listing the Croppers instead of the

10

insurance company). In any event, the parties agree this release had no legal effect.[5] (Hr'g Tr. 14, 16). Because Shelter is not attempting to enforce any aspect of the release, Puri still has an outstanding claim for bodily injury.[6]

For the purposes of this ruling the Court has assumed as true that Baugh fraudulently misrepresented the nature of the release signed, fraudulently omitted material information, and was negligent in procuring a release from Ms. Cropper. Because the release Ms. Cropper "was induced" to sign did not extinguish Puri's claim against Shelter, and given Puri's still-viable bodily injury claim, it is unclear how any assumed negligence or fraud by Baugh in procuring the signed release could have damaged Puri.

After the hearing, Puri was given an additional opportunity to explain her theory of damages, and Defendants a simultaneous opportunity to refute it. (Hr'g Tr. 33-34). In her supplemental filing, Puri claims damages including interest, attorneys' fees, and investigatory fees. (Pl.'s Supplemental Filing on Pl.'s Mot. to Remand 3). She also claims emotional damages. (Pl.'s Supplemental Filing on Pl.'s Mot. to Remand 3). Puri's arguments regarding these damages are unpersuasive. Without a proper claim of damages against Baugh, those claims must be dismissed.

---

[5] KRS 387.280 requires a Kentucky court's approval of settlement agreements under $10,000 with a minor. If followed, this statute may protect the minor in ensuring settlement funds are properly used and may protect the releasee in securing an effective release. If not followed, no release is enforceable against the payor which is left exposed to the prospect of double payment for the same claim.

[6] While pre-hearing briefing was equivocal, Puri asserted at the hearing her claims were properly considered first party claims. (Hr'g Tr. 4). Defendants do not reciprocate her equivocation regarding the status of the claim. They contend Puri's medical expenses, which were paid, are properly considered a first-party claim under the insurance policy. They suggest her bodily injury claim should be considered a third-party claim. (Hr'g Tr. 10-11). As mentioned, the Court declines to rule as to the type of claim, as it is immaterial to this ruling.

Any interest or attorneys' fees allegedly caused by Baugh have not yet been suffered by Puri to the extent they are recoverable from Shelter.[7] Shelter questions whether interest and attorneys' fees are ascertainable at the present time, and whether they are properly considered damages at all. The Court finds it unnecessary to answer this question. Shelter represented to the Court that it remains willing to pay the damages relating to any injury that Puri had suffered up to the policy limits, which may include attorneys' fees and interest. (Hr'g Tr. 17). Similarly, Puri raises the possibility of collecting investigation expenses related to the claim.[8] To the extent investigatory expenses might be recoverable, that is an issue this ruling need not decide because such costs may be encompassed in any damages assessment against Shelter. As such, no attorneys' fees, investigatory expenses, or interest are damages currently suffered as a result of any negligence or fraud attributable to Baugh. Unless or until Puri fails to recover any damages related to her claims under Shelter's insurance policy, she has not suffered damages because of Baugh's alleged malfeasance, so that the fraudulent or negligently-obtained release has not impaired her claims against Shelter.

Puri also alleges emotional damages. These might be available either as an independent tort, IIED, or as a component of damages in a negligence claim. Under either claim, Kentucky requires emotional damages be shown by "expert medical or scientific proof to support the claimed injury . . . ." *Osbourne v. Keeney*, 399 S.W.3d 1, 17 (Ky. 2012). As Puri argues, however, this expert proof is not required at this stage of the litigation. Thus, should Puri have

---

[7] If these elements of damage are not recoverable under Shelter's insurance policy, it is difficult to see how Baugh's alleged misconduct in adjusting the claim may have caused these damages.
[8] Among other expenses, Puri's counsel seems to be claiming investigatory expenses incurred in the *Adkins* case that revealed Shelter's potential liability here. Puri does not explain how expenses from another case are properly considered damages recoverable in this action.

viable claims for emotional damages, either as IIED or as part of a negligence claim, Baugh's inclusion would require remand.

While Puri has not specifically alleged emotional damages from negligence, such recovery would be possible from this claim. *See Rigazio v. Archhdiocese of Louisville*, 853 S.W.2d 295, 299 (Ky. App. 1993). While emotional damages from negligence historically required a physical injury or impact, that requirement is no longer exists under Kentucky law. *See Osborne¸* 399 S.W.3d at 1. Nonetheless, this does not excuse a plaintiff from plausibly alleging emotional damages. As the Kentucky Supreme Court has stated:

> [T]o ensure claims [for emotional distress] are genuine, . . . recovery should be provided only for "severe" or "serious" emotional injury. A "serious" or "severe" emotional injury occurs where a reasonable person, normally constituted, would not be expected to endure the mental stress engendered by the circumstances of the case. Distress that does not significantly affect the plaintiffs everyday life or require significant treatment will not suffice. And a plaintiff claiming emotional distress damages must present expert medical or scientific proof to support the claimed injury or impairment.

*Osborne*, 399 S.W.3d at 17-18 (footnotes omitted). Puri now claims emotional damages from Baugh's actions in 2010, but there are no such allegations in the Complaint related to either the fraud or negligence claims against Baugh. Likewise, there is no reference in the Complaint or any of Plaintiff's attachments to any treatment for emotional injuries. *Accord Powell v. Tosh*, No. 5:09-CV-00121-TBR, 2013 WL 1878934, at *4 (W.D. Ky. May 3, 2013) ("Plaintiffs here have neither alleged nor put forward any evidence that their alleged emotional distress has required significant treatment."); *Taylor v. JPMorgan Chase Bank, N.A.*, No. CIV. 13-24-GFVT, 2014 WL 66513, at *7 (E.D. Ky. Jan. 8, 2014) ("[Plaintiff] has alleged no facts that would allow the Court to make a reasonable inference that any emotional damage resulting from the hold on her check was anything more than the ordinary, everyday emotional harm that is not actionable under Kentucky law."). Kentucky "recognize[s] that emotional tranquility is rarely attained and

that some degree of emotional harm is an unfortunate reality of living in a modern society." *Osborne*, 399 S.W.3d at 17. Puri has failed adequately to allege serious emotional injury, and this Court concludes no Kentucky court would find the claim viable. Emotional damages on her negligence and fraud claims against Baugh offer no basis for remand.

The Court's conclusion that Puri has no colorable claim against Baugh is predicated on Shelter's continued representation that it is ready, willing, and able to pay Puri's bodily injury claim under its policy, distinguishes the instant matter from those presented to other courts. In *J.D. ex rel. De Giovanni v. Riley*, No. CIV.A. 5:14-409-KKC, 2015 WL 1222288 (E.D. Ky. Mar. 17, 2015), *M.L. ex rel. Herndon v. Buffin*, No. CIV.A. 5: 14-398-DCR, 2015 WL 770350 (E.D. Ky. Feb. 19, 2015), and *Wagner v. Hannifan*, No. 3:14-CV-00686, 2015 WL 1003858 (W.D. Ky. Mar. 6, 2015), courts remanded cases against Shelter and its adjusters to state courts after finding, *inter alia*, that negligence claims against adjusters were colorable under Kentucky law. The record in those cases contains no indication that Shelter made representations to those courts that it accepted the claims under the pertinent policies, and the issue of the adjuster's causation of damages was otherwise unexamined. Because Puri retains a viable bodily injury claim, which Shelter agreed to honor before this action was filed and continues to recognize,[9] she has not articulated a plausible theory of damages against Baugh on the fraud and negligence claims.

C.   **The conduct alleged does not support a claim of IIED.**

Emotional damages could still serve as a basis for remand were Puri's IIED claim plausible. Because Puri has not alleged outrageous conduct, it is not.

As this Court has explained:

---

[9] Shelter's deliberate and clear representation to the Court of its acceptance of Puri's policy claims constitutes a judicial admission. *See Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007) (citation omitted).

> Kentucky courts have set a high threshold for outrage claims, and in Kentucky, a claim for the tort of outrage requires the plaintiff to prove conduct which is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Osborn v. Haley*, No. 5:03CV-192-R, 2008 WL 974578, at *6 (W.D. Ky. Apr. 8, 2008) (quoting *Humana of Ky., Inc. v. Seitz*, 796 S.W.2d 1, 3 (Ky.1990)) (internal citations omitted) (internal quotation marks omitted). Commonly cited examples below the required threshold include where a defendant:

> (1) refused to pay medical expenses arising out of an injured worker's compensation claim; (2) wrongfully converted the plaintiffs property in a manner that breached the peace; (3) negligently allowed his vehicle to leave the road and struck and killed a child; (4) committed "reprehensible" fraud during divorce proceedings by converting funds belonging to his spouse for the benefit of defendant and his adulterous partner; (5) wrongfully terminated the plaintiff; (6) displayed a lack of compassion, patience, and taste by ordering plaintiff, who was hysterical over the fact that she had just delivered a stillborn child in her hospital room, to "shut up" and then informing her that the stillborn child would be "disposed of in the hospital"; (7) erected a billboard referencing defendant's status as a convicted child molester; (8) wrongfully garnished plaintiffs wages pursuant to a forged agreement; and (9) impregnated plaintiff's wife.

*Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 790-91 (Ky. 2004) (internal citations omitted), *overruled on other grounds by Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276 (Ky. 2014).

Taking the factual allegations of the complaint as true, Baugh's alleged conduct simply fails to rise to this level. Puri alleges Baugh negligently or fraudulently induced her parents to sign an improper release. She claims this inducement resulted in a lower settlement offer than she otherwise might have received. Such actions might give rise to liability, but not as outrageous conduct under IIED. Assuming malicious and deceptive contravention of statutory protections does not change the analysis. The conduct alleged simply does not rise to the level of intentional infliction of emotional distress. This claim is not viable under the *Coyne* standard.

15

## IV. CONCLUSION

The Plaintiff's Motion to Remand (DN 6) is **DENIED**. The Court finds by a preponderance of the evidence the amount in controversy exceeds $75,000. The Court finds Baugh was fraudulently joined to this action as no claim against her is colorable under Kentucky law. Puri has failed to show damages resulting from the fraud and negligence claims which are ripe at this time. While damages for the IIED claim need not be proven at this stage of the litigation, Puri has failed to allege facts that plausibly state a claim for IIED under Kentucky law. Defendant's Motion for Leave to File a Response to Plaintiff's Supplemental Filing (DN 27) is **DENIED** as moot.

Greg N. Stivers, Judge
United States District Court
June 18, 2015

cc: counsel of record